IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| SAGE SCHMIDT, a minor, by and through Doran Schmidt, her natural mother and next friend, and DORAN SCHMIDT, Individually,<br><br>Plaintiffs,<br><br>vs.<br><br>HEATHER RAMSEY, APRN-CNM, THE MIDWIFE'S PLACE L.L.C., and the BELLEVUE MEDICAL CENTER L.L.C.,<br><br>Defendants. | CASE NO. 8:13CV143<br><br>MEMORANDUM<br>AND ORDER |

This matter is before the Court on the Motion of Defendants, Heather Ramsey, APRN-CNM and the Midwife's Place, L.L.C., for Summary Judgment Pursuant to Fed. R. Civ. P. 56 (Filing No. 39). For the reasons discussed below, the Motion will be denied, and the Plaintiffs' pending procedural motions will be denied as moot.

**FACTUAL AND PROCEDURAL HISTORY**

Plaintiff Doran Schmidt ("Doran") and her infant daughter, Plaintiff Sage Schmidt ("Sage"), are residents of Colorado. Defendant Heather Ramsey ("Nurse Ramsey") is a certified nurse midwife, practicing and residing in Nebraska. Defendant The Midwife's Place L.L.C. ("The Midwife's Place") is a limited liability company operating in Bellevue, Nebraska, specializing in care and treatment related to pregnancy, labor and delivery. Defendant Bellevue Medical Center L.L.C. ("BMC") is a limited liability company operating a hospital located in Bellevue.

On November 1, 2012, Doran was admitted to The Midwife's Place for labor and delivery. Nurse Ramsey assisted with her care at The Midwife's Place until Doran was transferred to BMC, while in active labor. Sage was born on November 2, 2012. Plaintiffs

allege that they were "traumatized and injured, suffering permanent injuries, including but not limited to, brain damage, subacute/acute hypoxic ischemic damage, seizures, developmental delay, perinatal depression, respiratory distress, meconium, and other birth injuries." (Amended Complaint, Filing No. 3 at ¶ 18.) They filed their Amended Complaint in this Court on May 7, 2013, invoking the Court's diversity jurisdiction, and alleging that all Defendants were negligent in their treatment of the Plaintiffs, and that Nurse Ramsey failed to impart information to Doran, necessary to obtain informed consent for treatment. Nurse Ramsey and The Midwife's Place moved for Summary Judgment, relying only on the Amended Complaint itself and a five-paragraph affidavit of Nurse Ramsey, in which she asserts: (1) The Midwife's Place contracted with the Centers for Medicare and Medicaid Services to receive payment for services provided to qualified patients in the form of Medicaid, (2) The Midwife's Place provided care for qualifying individuals in accordance with the Medicaid "medical necessity" requirement, (3) once care was provided, Medicaid funds were disbursed to care providers in accordance with those requirements, (4) The Midwife's Place employed certified nurse midwives to carry out individualized care, as established in accordance with Medicaid medical necessity requirements, and (5) she provided care to Doran in accordance with the medical necessity requirements, as well as state statutes and regulations applicable to certified nurse midwives.

  In their brief in support of the Motion for Summary Judgment (Filing No. 40) Nurse Ramsey and The Midwife's Place rely on a theory that 42 U.S.C. § 1320c-6(b) preempts traditional state tort law and provides them with absolute immunity from suit. The statute provides:

> No organization having a contract with the Secretary [of Health and Human Services] under this part and no person who is employed by, or who has a fiduciary relationship with, any such organization or who furnishes professional

2

> services to such organization, shall be held by reason of the performance of any duty, function, or activity required or authorized pursuant to this part or to a valid contract entered into under this part, to have violated any criminal law, or to be civilly liable under any law of the United States or of any State (or political subdivision thereof) provided due care was exercised in the performance of such duty, function, or activity.

Nurse Ramsey and The Midwife's Place acknowledge that this statute, last revised in 1990, has never been applied to patient treatment cases, and has been "curiously overlooked." (Defendants' Brief, Filing No. 40 at 4, 6.) They urge this Court to take advantage of a "truly exciting opportunity to implement" the statute as they suggest, thereby assisting in the reduction of "expensive and wasteful 'defensive medicine,'" improving "absolutely essential cost containment," and paving the way for affordable universal health care.

The Plaintiffs moved to strike the affidavit of Nurse Ramsey (Filing No. 45), or for a continuance allowing discovery regarding her assertions (Filing No. 49.) The Defendants did not respond to either motion.

Nurse Ramsey and The Midwife's Place filed a Reply Brief (Filing No. 56), raising new and novel theories not raised in their initial Brief (Filing No. 40) nor raised in the Plaintiffs' Brief in Opposition to the Motion for Summary Judgment (Filing No. 47). In the Reply Brief, Nurse Ramsey and The Midwife's Place suggest that the traditional tort malpractice standard of care is obsolete, and that the Defendants are entitled to sovereign immunity from suit, because as providers under a Medicaid program they are "worthy to be designated as *de jure* Officers of the United States for the sake of this case[.]" (Reply Brief, Filing No. 56 at 18.) Nurse Ramsey and The Midwife's Place filed the Affidavit of Stanley M. Berry, M.D. (Filing No. 56-2) in support of the new theories raised in their Reply Brief. Dr. Berry purports to offer his expert opinion that Nurse Ramsey "at all times pertinent to the labor and delivery . . . did comply with the general standard of care[.]" *Id*. at ¶ 13.

3

**STANDARD OF REVIEW**

"Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, demonstrates there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Gage v. HSM Elec. Prot. Servs., Inc.*, 655 F.3d 821, 825 (8th Cir. 2011) (citing Fed. R. Civ. P. 56(c)). The court will view "all facts in the light most favorable to the non-moving party and mak[e] all reasonable inferences in [that party's] favor." *Schmidt v. Des Moines Pub. Sch.*, 655 F.3d 811, 819 (8th Cir 2011). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue . . . Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The moving party need not negate the nonmoving party's claims by showing "the absence of a genuine issue of material fact." *Id.* at 325. Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Id.*

In response to the movant's showing, the nonmoving party's burden is to produce specific facts demonstrating "'a genuine issue of material fact' such that [its] claim should proceed to trial." *Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 422 (8th Cir. 2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)). The nonmoving party "'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (quoting *Matsushita*, 475 U.S. at 586-87)), *cert. denied,* 132 S. Ct. 513 (2011). "'[T]he mere existence of *some* alleged factual dispute between the parties'" will not defeat an otherwise

4

properly supported motion for summary judgment. *Quinn v. St. Louis Cnty.*, 653 F.3d 745, 751 (8th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986)).

In other words, in deciding "a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts.'" *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Scott v. Harris,* 550 U.S. 372, 380 (2007)). Otherwise, where the Court finds that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party"–where there is no "'genuine issue for trial'"–summary judgment is appropriate. *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

## DISCUSSION

NECivR 7.1(c) requires that a "reply brief . . . must address factual or legal issues raised in the opposing brief." Here, the Reply Brief submitted by Nurse Ramsey and The Midwife's Place raises new issues not presented in their initial brief nor in the Plaintiffs' responsive brief. The Court will not consider the arguments presented in the Reply Brief, nor will it consider the affidavit of Dr. Berry.

With respect to the argument of federal preemption and "absolute immunity" presented in the initial brief submitted by Nurse Ramsey and The Midwife's Place, this Court finds the argument to be without merit.

Even assuming that The Midwife's Place is an "organization having a contract with the Secretary [of Health and Human Services]" or an entity "who has a fiduciary relationship with . . . or who furnishes professional services to such organization" and assuming that Nurse Ramsey is a "person who is employed by, or who has a fiduciary relationship with, any such organization or who furnishes professional services to such organization," under 42 U.S.C. §

1320c-6(b), it cannot be inferred that each allegedly negligent act or omission listed in the Amended Complaint was a "duty, function, or activity required or authorized pursuant to [§ 1320c] or to a valid contract entered into under [§ 1320c.]"

Section 1320c, *et seq.*, establishes a process to be followed by the Secretary of Health and Human Services when implementing medicare and medicaid reimbursement programs, including the creation of a peer review system developed through disinterested "quality improvement organizations" with whom the Secretary is authorized to contract. A quality improvement organization may review the activities of health professionals in its area "for the purpose of determining whether . . . the quality of such services meets professionally recognized standards of health care[.]" 42 U.S.C. § 1320c-3(a)(1)(B). The organization must ensure that a "reasonable proportion of its activities" involves review of the quality of health care services in the area, allocated among different cases and settings. *Id*. at § 1320c-3(a)(4)(A). The organization is also required to "apply professionally developed norms of care, diagnosis, and treatment based upon typical patterns of practice within the geographic area served by the organization as principal points of evaluation and review, taking into consideration national norms where appropriate." *Id*. at § 1320c-3(a)(6)(A).

If a quality improvement organization determines that a physician or other health care practitioner failed to establish that health care services were provided economically, to the extent medically necessary, and in a manner meeting professionally recognized standards of care, then the organization may take certain remedial actions, including a report and recommendation to the Secretary that the practitioner be excluded from participating in the medicare/medicaid reimbursement program. 42 U.S.C. §§ 1320c-3(a)(9)(B), 1320c-5(a), (b).

Nothing in 42 U.S.C. § 1320c *et seq.* suggests that the statutes were designed to supplant common law tort actions for professional malpractice. The language of 42 U.S.C. § 1320c-6(b), on which Nurse Ramsey and The Midwife's Place rely, provides organizations and persons with certain immunity for "performance of any duty, function, or activity required or authorized pursuant to [42 U.S.C. § 1320c] or a valid contract entered into under [42 U.S.C. § 1320c] . . . provided due care was exercised in the performance of such duty, function, or activity."

The rendering of health care services in the form of *patient care itself* is not such a "duty function, or activity" under a plain reading of 42 U.S.C. § 1320c.

Accordingly,

IT IS ORDERED:

1.  The Motion of Defendants, Heather Ramsey, APRN-CNM, and the Midwife's Place, L.L.C., for Summary Judgment Pursuant to Fed. R. Civ. P. 56 (Filing No. 39) is denied; and

2.  The Plaintiffs' Motion to Strike (Filing No. 45), and Motion to Continue (Filing No. 49), are denied as moot.

DATED this 25th day of November, 2013.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge