IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| S.S., a Minor, by and through Doran Schmidt, her natural mother and Next friend, and DORAN SCHMIDT, Individually, | ) ) ) ) ) | CASE NO. 8:13-cv-00143 |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| HEATHER RAMSEY, APRN-CNM, THE MIDWIFE'S PLACE, LLC, and THE BELLEVUE MEDICAL CENTER, LLC | ) ) ) ) | |
| Defendants. | ) | |

---

**BRIEF IN SUPPORT OF THE AMERICAN COLLEGE OF OBSTETRICIANS AND GYNECOLOGISTS' MOTION FOR LEAVE TO FILE BRIEF AS *AMICUS CURIAE* IN SUPPORT OF DEFENDANTS' MOTION *IN LIMINE* (Filings Nos. 146 & 160)**

---

Submitted by:

Mark E. Novotny, #19102
David J. Schmitt, #19123
Nathan K. Tenney, #25559
LAMSON DUGAN & MURRAY, LLP
10306 Regency Parkway Drive
Omaha, NE 68114
(402) 397-7300
mnovotny@ldmlaw.com
dschmitt@ldmlaw.com
ntenney@ldmlaw.com
ATTORNEYS FOR THE AMERICAN COLLEGE OF OBSTETRICIANS AND GYNECOLOGISTS AS *AMICUS CURIAE*

The American College of Obstetricians and Gynecologists ("ACOG") respectfully submits, pursuant to NECivR 7.1(a)(1)(b), this Brief in Support of its Motion for Leave to File Brief of *Amicus Curiae* in Support of the Defendants' *Daubert* Motions in this matter (Filing Nos. 146 & 160). ACOG additionally submits with this Brief a proposed Order granting such leave.

## INTRODUCTION

Founded in 1951, ACOG is a private, nonprofit organization with over 58,000 current members, which includes 333 members in the state of Nebraska. As the nation's leading group of professionals providing health care for women, over 90% of American board-certified obstetricians and gynecologists are affiliated with ACOG, including both generalists and subspecialists in areas such as maternal-fetal medicine, gynecologic oncology, reproductive endocrinology, and urogynecology. The objectives of ACOG are to foster and stimulate improvements in all aspects of the health care of women in the United States and globally, including establishing and maintaining the highest possible standards for education; fostering the highest standards of practice in its relationship to public welfare; promoting high ethical standards in practice; and promoting publications and encouraging contributions to medical and scientific literature. These objectives are responsive to the constituency and communities served by ACOG and are of significant value to society at large.

To properly execute its mission and objectives, ACOG primarily works in four areas: 1) serving as a strong advocate for quality healthcare for women; 2) establishing and maintaining the highest ethical standards of clinical practice and education for its members; 3) promoting patient education and stimulating patient understanding of and involvement in medical care; and, 4) increasing awareness among its members and the public of the changing issues facing

women's health care. In addition, ACOG keeps its members informed of current clinical guidelines and professional recommendations through the publication of Committee Opinions, Practice Bulletins, and Technology Assessments, as well as its own publication *Obstetrics & Gynecology* (commonly referred to by professionals as the "Green Journal"), which is one of the leading monthly peer-reviewed scientific medical journals focused solely on women's healthcare. ACOG produces various patient education materials on a wide range of women's health issues such as contraception, sexually transmitted diseases, gynecologic cancers, infertility, pregnancy, menopause, and health screenings. Various federal agencies also work closely with ACOG, including the National Institute of Child Health and Human Development, U.S. Centers for Disease Control and Prevention, Office of Women's Health in the U.S. Department of Health and Human Services, U.S. Food and Drug Administration, and numerous women's health coalitions.

## ARGUMENT

I. **FEDERAL DISTRICT COURTS HAVE THE AUTHORITY AND BROAD DISCRETION TO ACCEPT BRIEFS FROM *AMICUS CURIAE* WHEN SUCH HAS AN INTEREST IN THE MATTER AND CAN PROVIDE USEFUL AND TIMELY INFORMATION**

It is well settled that a federal district court has "inherent authority" to allow an *amicus curiae* to participate in a case to which it is not a party, and that such authority "is derived from Rule 29 of the Federal Rules of Appellate Procedure." *Smith v. Chrysler Fin. Co., L.L.C.*, 2003 WL 328719, at *8 (D.N.J. Jan. 15, 2003); *see also, Jin v. Ministry of State Security*, 557 F.Supp.2d 131, 137 (D.D.C. 2008) (stating "[d]istrict courts have inherent authority to appoint or deny *amici* which is derived from Rule 29 of the Federal Rules of Appellate Procedure"); *Sierra Club v. Fed. Emergency Mgmt. Agency*, 2007 WL 3472851, at *3 (S.D. Tex. Nov. 14, 2007) (finding no statute, rule or controlling case that defines a federal district court's power to grant or

3

deny leave to file *amicus* brief). "An amicus curiae, defined as 'friend of the court,' . . . does not represent the parties but participates for the benefit of the Court." *United States v. Microsoft Corp.*, 2002 WL 319366, at *2 (D.D.C. 2002).

Federal district courts have broad discretion in deciding whether to grant a third party leave to file an *amicus curiae* brief. *See Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 519 F.Supp.2d 89, 93 (D.D.C. 2007); *Jin*, at 136 (stating "[i]t is solely within the court's discretion to determine 'the fact, extent, and manner' of the participation") (quoting *Cobell v. Norton*, 246 F.Supp.2d 59, 62 (D.D.C. 2003)); *Sciotto v. Marple Newtown Sch. Dist.*, 70 F.Supp.2d 553, 554 (E.D. Pa. 1999); *Yip v. Pagano*, 606 F.Supp. 1566, 1568 (D.N.J.), aff'd 782 F.2d 1033 (3d Cir. 1985); *U.S. v. Gotti*, 755 F. Supp. 1157, 1158 (E.D.N.Y. 1991) (stating "[s]ince an *amicus* is not a party to the litigation, but participates only to assist the court, the extent to which, if at all, the *amicus* should be permitted to participate lies solely within the discretion of the court") (citation omitted).

Courts typically allow an *amicus* brief to be filed when "the brief will assist the judges by presenting ideas, arguments, theories, insights, facts, or data that are not to be found in the parties' brief." *Voices for Choices v. Illinois Bell Tel. Co.*, 339 F.3d 542, 545 (7th Cir. 2003). "An *amicus* brief should normally be allowed . . . when the *amicus* has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide." *Ryan v. Commodity Futures Trading Comm'n*, 125 F.3d 1062, 1064 (7th Cir. 1997). In addition, such briefs are generally permitted when "the information offered is timely and useful." *Ellsworth Assocs. v. United States*, 917 F.Supp. 841, 846 (D.D.C. 1996).

This Court and other federal district courts within the United States Court of Appeals for the Eighth Circuit have routinely exercised discretion and granted a third party leave to file a

brief as *amicus curiae*. *See e.g.*, *Bothwell v. Republic Tobacco Co.*, 912 F.Supp. 1221, 1224 (D. Neb. 1995) (granting leave to "several interested [third] parties to submit *amicus curiae* briefs); *Sprint Communications Co. L.P. v. Nebraska Public Service Com'n*, No. 4:05CV3260, 2006 WL 148997, at *3 (D. Neb. Jan. 18, 2006) (granting a third party telecommunications company leave to file a brief as *amicus curiae*); *Smith v. Parker*, No. 4:07CV3101, 2013 WL 2947505, at *3 (D. Neb. June 13, 2013) (granting leave to multiple third party government entities to file briefs as *amicus curiae*); *United Fire & Cas. Co. v. Titan Contractors Service, Inc.*, No. 4:10-CV-2076 CAS, 2012 WL 3065517, at * 7 (E.D. Mo. July 27, 2012) (granting multiple third parties leave to appear as *amicus curiae* and submit positions on a dispositive motion). Another federal district court has granted a third party leave to file an *amicus* brief based on "a special interest in [the] litigation as well as a familiarity and knowledge of the issues raised therein that could aid in the resolution of [the] case." *Ellsworth*, 917 F.Supp. at 846.

II. **ACOG HAS A SPECIAL INTEREST IN THIS COURT'S RULING ON DEFENDANTS' MOTION *IN LIMINE* AND CAN ASSIST THE COURT BY PROVIDING TIMELY AND USEFUL INFORMATION REGARDING CRANIOCEREBRAL COMPRESSION ISCHEMIC ENCEPHALOPATHY.**

As discussed more fully in its forthcoming Brief of *Amicus Curiae*, ACOG has "a special interest in [this] litigation as well as a familiarity and knowledge of the issues raised [herein] that could aid [this Court] in the resolution of [the Defendants' motion *in limine*]." *See id.* Specifically, ACOG has a strong and special interest in this Court's decision to either allow or exclude expert opinions relating to the scientifically unfounded, unsupported, and widely unaccepted theory of causation known as Craniocerebral Compression Ischemic Encephalopathy ("CCIE"). Considering ACOG's mission and objectives, as stated above, allowing such an attenuated and unproven theory of causation would inadvertently and effectively validate a medical principle that has not been properly established or even authenticated within the

applicable medical community. This potentially adverse and imminent result is of great concern and importance to ACOG, its physician members, and, most importantly, the women they serve.

In addition, ACOG has a special interest in decreasing and eliminating medical malpractice jury verdicts wherein a plaintiff relied on unproven and unfounded scientific theories and is nonetheless awarded substantial damages. This too is of great concern to ACOG because its members and the women they serve are directly affected by the outcomes of such cases. The standards of care that apply to the medical community are discussed, amended, and defined throughout courtrooms across this nation, and cases as significant as the one before this Court can significantly influence the practices of medical professionals, including members of ACOG, as well as the price and availability of healthcare products and services to women as patients.

Accordingly, this Court's decision regarding the Defendants' motion *in limine* will have an immediate and lasting impact on the healthcare of women in the State of Nebraska and across the United States of America. Considering the potentially broad and sweeping effects of allowing expert opinions and conclusions based on a scientifically invalid and unproven theory of causation, this Court should exercise its discretion and grant ACOG leave to file a brief as *amicus curiae* along with ACOG's Index of Evidence.

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, ACOG respectfully requests this Court grant ACOG leave to file its Brief as *amicus curiae* and Index of Evidence.

[SIGNATURE BLOCK IS ON THE NEXT PAGE]

DATED: April 2, 2015

                         Respectfully submitted,

By:    /s/Mark E. Novotny
         Mark E. Novotny, #19102
         David J. Schmitt, #19123
         Nathan K. Tenney, #25559
         LAMSON DUGAN & MURRAY, LLP
         10306 Regency Parkway Drive
         Omaha, NE 68114
         (402) 397-7300
         mnovotny@ldmlaw.com
         dschmitt@ldmlaw.com
         ntenney@ldmlaw.com
         ATTORNEYS FOR THE AMERICAN
         COLLEGE OF OBSTETRICIANS AND
         GYNECOLOGISTS AS *AMICUS CURIAE*

## CERTIFICATE OF SERVICE

I hereby certify that on April 2, 2015, I filed the forgoing with the Clerk of Court using the CM/ECF system, which sent notification of such filing to the following:

| Patrick J. Cullan | Joseph P. Cullan | Ralph F. Valitutti, Jr. | Ronald E. Frank |
|---|---|---|---|
| Pat@Cullanlaw.com | J.cullan@Cullanlaw.com | Ralph.Valitutti@Kitch.com | RFrank@sodorolaw.com |
| Julia K. McNeils | Thomas J. Shomaker | Kathryn J. Cheatle | Brien M. Welch |
| Julia.mcnelis@kitch.com | tshomaker@sodorolaw.com | KCheatle@ctagd.com | BWelch@ctagd.com |

And I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participant:

    None.

                         /s/ Mark E. Novotny

605822v2