IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| S.S., a minor, by and through Doran Schmidt, her natural mother and next friend, and DORAN SCHMIDT, Individually,<br><br>Plaintiffs,<br><br>vs.<br><br>BELLEVUE MEDICAL CENTER L.L.C.,<br><br>Defendant. | CASE NO. 8:13CV143<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on the Motion in Limine (Filing No. 160) and Motion for Summary Judgment (Filing No. 162) submitted by Defendant Bellevue Medical Center, LLC ("BMC"). The American College of Obstetricians and Gynecologists ("ACOG") seeks leave to file an amicus brief in support of BMC's Motion in Limine. (See Filing No. 168.) ACOG's motion will be granted. The Court has considered ACOG's brief (Filing No. 170) and evidence (Filing Nos. 171, 172) as well as the parties' briefs (Filing Nos. 163, 164, 184, 185, 187, 188) and evidence (Filing Nos. 165, 186). For reasons discussed below, BMC's Motion in Limine will be granted in part, and its Motion for Summary Judgment will be denied.

**FACTUAL AND PROCEDURAL SUMMARY**

Plaintiff Doran Schmidt ("Schmidt") and her infant daughter "S.S." are residents of Colorado. BMC is a limited liability company operating a hospital in Bellevue, Nebraska. Complete diversity of citizenship exists as to the Plaintiffs and all members of BMC, and the amount in controversy exceeds $75,000.

On November 1, 2012, Schmidt was in active labor. She was admitted to a Bellevue facility specializing in care related to labor and delivery, but was later transferred to BMC,

where S.S. was born on November 2, 2012.  S.S. suffered birth-related injuries resulting in permanent disabilities, giving rise to this action.

In its Motion in Limine, BMC seeks to limit the testimony of three of the Plaintiffs' expert witnesses, as that testimony may relate to causation: Dr. Martin Gubernick, Dr. Stephen Glass, and Laura L. Mahlmeister, Ph.D., R.N.  In its Motion for Summary Judgment, BMC also contends that a fourth expert designated by the Plaintiffs, Dr. Patrick Barnes, will testify about the nature of S.S.'s injuries, but not how any breach of a standard of care by BMC caused those injuries; therefore, judgment should be rendered in favor of BMC as a matter of law for lack of evidence on an essential element of the Plaintiffs' claims.

With respect to Mahlmeister, BMC notes that she has acknowledged she is not qualified to offer opinions on the cause of S.S.'s injuries, and has no intention to do so. BMC indicates that its Motion as it relates to Mahlmeister is presented simply to deter the Plaintiffs' counsel from being "tempted" to elicit such opinions from Mahlmeister. (Defendant's Brief, Filing No. 164 at 23.)  The Plaintiffs' responsive briefs (Filing Nos. 185 and 187) do not oppose the limitation on Mahlmeister's testimony, and BMC's Motion in Limine will be granted as to Mahlmeister.

With respect to Dr. Glass, in essence BMC seeks to preclude him from offering an opinion that S.S's injuries were due to Schmidt's protracted labor with frequent hard contractions, exacerbated by BMC's administration of labor stimulants, leading to pressure on S.S.'s cranium, limiting blood supply to S.S.'s brain (ischemia).  Dr. Glass describes this process as "Craniocerebral Compression Ischemic Encephalopathy" or "CCIE."

With respect to Dr. Gubernick, BMC seeks to preclude him from offering an opinion that S.S.'s injuries were caused by BMC's failure to perform a caesarian section, suggesting that such an opinion is "too vague" to assist the trier of fact, is within common

2

knowledge, and is obvious to the average juror. (BMC's Brief, Filing No. 164 at ECF 6-7 and 18-19 (citing *McDowell v. Brown*, 392 F.3d 1283, 1299-1300 (11th Cir. 2004)).) BMC also seeks to preclude Dr. Gubernick from offering an opinion that three factors likely acted in concert to cause S.S.'s injuries: (1) insufficient oxygen in the fetal blood (hypoxia) due to excessive uterine activity, (2) trauma to S.S.'s head, from repeated impact against Schmidt's pelvic bones during uterine contractions, and (3) inflammation resulting from rupture of membranes (chorioamnionitis), all occurring during Schmidt's prolonged, intense labor. While BMC acknowledges that hypoxia and chorioamnionitis can injure a fetus during labor, BMC suggests that Dr. Gubernick's opinion that fetal head trauma during uterine contractions was a cause of S.S.'s injuries essentially mirrors Dr. Glass's "CCIE" theory and is unsupported by scientific evidence. BMC also suggests that because Dr. Gubernick's opinion as to causation incorporates multiple factors, he should be precluded from offering *any* opinion as to causation if any *one* of those factors fails analysis under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

BMC concedes that the "CCIE" and intra-uterine trauma theories of causation may be plausible, but contends they are mere hypotheses not generally accepted in the medical community; unsupported by testing, peer review, publication, or knowable rates of error; and inadmissible under *Daubert*. (BMC Brief, Filing No. 164 at 7 (citing *Tamraz v. Lincoln Electric Co.*, 620 F.3d 665 (6th Cir. 2010)).)

In BMC's Motion for Summary Judgment, it argues that the Plaintiffs cannot satisfy their burden of proof as to causation, an element of their claims, and judgment should be entered in BMC's favor as a matter of law.

3

**LEGAL STANDARDS**

Motion in Limine

"A United States District Court sitting in diversity jurisdiction applies the substantive law of the forum state . . . ." *Fogelbach v. Wal-Mart Stores, Inc.*, 270 F.3d 696, 698 (8th Cir. 2001). A federal court sitting in diversity will also apply federal procedural law. *Great Plains Trust Co. v. Union Pacific R.R. Co.*, 492 F.3d 986, 995 (8th Cir. 2007) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938)). Accordingly, this Court applies the Federal Rules of Evidence and looks to cases interpreting those Rules, while recognizing that the relevance of any expert's testimony may depend upon questions of substantive law of the forum state, Nebraska.

Federal Rule of Evidence 702 governs the admissibility of expert testimony: A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702.

In *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), the Supreme Court held that trial court judges must act as "gatekeepers" to screen proffered expert testimony to ensure that what is admitted "is not only relevant, but reliable." 509 U.S. at 589. The Supreme Court emphasized that "[t]he inquiry envisioned by Rule 702 . . . is a flexible one." *Id.* at 594. The Supreme Court suggested four factors that trial court judges may wish to consider: (1) whether a theory or technique can be and has been tested, (2) whether it has been subject to peer review or publication, (3) whether it has known or potential error rates

4

and standards, and (4) its general acceptance in the scientific community. *Id*. at 593-94. It is the proponent's burden to establish admissibility of the evidence, and not the opponent's burden to establish inadmissibility. *Lust v. Merrell Dow Pharmaceuticals*, 89 F.3d 594, 598 (9th Cir.1996).

Motion for Summary Judgment

"Summary judgment is appropriate when, construing the evidence most favorably to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Crozier v. Wint,* 736 F.3d 1134, 1136 (8th Cir. 2013) (citing Fed. R. Civ. P. 56(c)). "Summary Judgment is not disfavored and is designed for every action." *Briscoe v. Cnty. of St. Louis*, 690 F.3d 1004, 1011 n. 2 (8th Cir. 2012) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) *cert. denied*, 132 S.Ct. 513 (2011)) (internal quotations omitted). In reviewing a motion for summary judgment, the court will view "all facts and mak[e] all reasonable inferences favorable to the nonmovant." *Gen. Mills Operations, LLC v. Five Star Custom Foods, Ltd.,* 703 F.3d 1104, 1107 (8th Cir. 2013). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue . . . Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The moving party need not negate the nonmoving party's claims by showing "the absence of a genuine issue of material fact." *Id*. at 325. Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Id.*

In response to the movant's showing, the nonmoving party's burden is to produce specific facts demonstrating "'a genuine issue of material fact' such that [its] claim should

proceed to trial." *Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 422 (8th Cir. 2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Briscoe,* 690 F.3d at 1011 (quoting *Torgerson*, 643 F.3d at 1042) (internal quotations omitted). "'[T]he mere existence of some alleged factual dispute between the parties'" will not defeat an otherwise properly supported motion for summary judgment. *Quinn v. St. Louis Cty.*, 653 F.3d 745, 751 (8th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).

In other words, in deciding "a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Guimaraes v. SuperValu, Inc.*, 674 F.3d 962, 972 (8th Cir. 2012) (quoting *Torgerson*, 643 F.3d at 1042) (internal quotations omitted). Otherwise, where the Court finds that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," there is no "genuine issue for trial" and summary judgment is appropriate. *Torgerson*, 643 F.3d at 1042 (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)) (internal quotations omitted).

## DISCUSSION

"To make a prima facie case of medical malpractice, a plaintiff must show (1) the applicable standard of care, (2) that the defendant deviated from that standard of care, and (3) that this deviation was the proximate cause of the plaintiff's harm." *Olson v. Wrenshall*, 822 N.W.2d 336, 341 (2012).

"A defendant's negligence is not actionable unless it is a proximate cause of the plaintiff's injuries or is a cause that proximately contributed to them." *Hamilton v. Bares*,

6

678 N.W.2d 74, 79 (Neb. 2004). "In the medical malpractice context, the element of proximate causation requires proof that the physician's deviation from the standard of care caused or contributed to the injury or damage to the plaintiff." *Thone v. Regional West Med. Ctr.,* 745 N.W.2d 898, 908 (Neb. 2008). "Expert testimony is almost always required to prove proximate causation. Nevertheless, as with the standard of care, the common-knowledge exception applies to proximate causation in professional negligence cases. Thus causation may be inferred without expert testimony if the causal link between the defendant's negligence and the plaintiff's injuries is sufficiently obvious to laypersons." *Id.* at 908. Here, Plaintiffs have no intention of relying on the common-knowledge exception. (*See* Plaintiffs' Brief, Filing No. 187 at 5.)

Plaintiffs allege, *inter alia*, that BMC failed to evaluate Schmidt for cephalopelvic disproportion, diagnose cephalopelvic disproportion, and perform a caesarian section; administered Pitocin when it was contraindicated; mistook Schmidt's heart beat for that of S.S.; and failed to perform a caesarean section when S.S's fetal heart rate deteriorated; causing S.S. to be born with hypoxic ischemic encephalopathy–a permanent brain injury resulting from a lack of oxygen reaching the brain due to inadequate oxygen in the blood or inadequate blood flow to the brain. (Plaintiffs' Brief, Filing No. 185 at 12-14; Deposition of Dr. Patrick Barnes, M.D., Filing No. 165-10 at 34:2-35:7; Report of Dr. Martin Gubernick, M.D., Filing No. 165-1 at ECF 6.)

At this juncture, BMC does not deny that the Plaintiffs can prove applicable standards of care, and that BMC deviated from one or more of those standards, though BMC does not concede or even discuss specific facts related to those two elements of the Plaintiffs' claims. The focus of both of BMC's Motions is the reliability of the principles and

7

methods used by Dr. Glass and Dr. Gubernick in arriving at the opinion that BMC's alleged deviations from the standard of care caused S.S.'s injuries.

Although it may "intuitively obvious"[1] that intense and prolonged labor can injure a fetus, the Court is not persuaded that Plaintiffs have met their burden of demonstrating that Dr. Glass's "CCIE" theory or Dr. Gubernick's intrauterine trauma theory can be and have been tested, have been subjected to peer review and publication, have known or potential error rates and standards, or are generally accepted in the medical community. *See Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757-58 (8th Cir. 2006) ("To satisfy the reliability requirement, the proponent of the expert testimony must show by a preponderance of the evidence both that the expert is qualified to render the opinion and that the methodology underlying his conclusions is scientifically valid." ). Accordingly, the Court cannot conclude at this juncture that those opinions are the products of reliable principles and methods. The Court will offer the Plaintiffs the opportunity for a *Daubert* hearing to attempt to meet their burden.

Yet, even if Dr. Glass's "CCIE" theory and Dr. Gubernick's intrauterine trauma theory are excluded under *Daubert*, summary judgment for BMC is not warranted. The Court agrees with the Plaintiffs that Nebraska courts apply a "substantial factor" test when determining whether a defendant's negligence is actionable "when multiple causes act to produce a single injury or when the active negligence of a third person is also a substantial factor in bringing about the harm." *Reimer v. Surgical Services of the Great Plains, P.C.*, 605 N.W.2d 777, 781 (Neb. 2000). Here, Dr. Gubernick's opinions that hypoxia from tetanic contractions and hyperstimulation, and chorioamnionitis from prolonged rupture of membranes and inflamation of tissue, were substantial factors causing or proximately

---

[1] Deposition of Dr. Martin Gubernick, M.D., Filing No. 165-2, 95:3-4.

8

contributing to S.S.'s injuries appear to be admissible. The Court also disagrees with BMC's suggestion that Dr. Gubernick's opinions regarding BMC's failure to perform a caesarian section at specific stages of Schmidt's treatment are inadmissible. If the Plaintiffs demonstrate that the applicable standard of care required BMC to evaluate Schmidt for cephalopelvic disproportion, and that BMC deviated from that standard of care, and that such an evaluation would have resulted in a diagnosis of cephalopelvic disproportion and indicated the need for a caesarian section under the applicable standard of care, then Dr. Gubernick may offer his opinion that BMC's failure to perform a caesarian section at that juncture was the proximate cause of S.S.'s injuries, or a cause that proximately contributed to them. Similarly, if the Plaintiffs demonstrate that the applicable standard of care required BMC to monitor S.S.'s fetal heart rate and to perform a caesarian section if that fetal heart rate deteriorated to a certain level, and the Plaintiffs demonstrate that BMC deviated from that standard of care, then Dr. Gubernick may offer his opinion that BMC's failure to perform a caesarian section at that juncture was the proximate cause of S.S.'s injuries, or a cause that proximately contributed to them.

Accordingly,

IT IS ORDERED:

1. The Motion of the American College of Obstetricians and Gynecologists for Leave to File Brief and Evidence as Amicus Curiae in Support of Defendants' Motion in Limine (Filing No. 168) is granted;

2. The Bellevue Medical Center's Daubert Motion/Motion in Limine and Request for Oral Argument (Filing No. 160) is granted in part as follows:

    (a). Plaintiffs are precluded, in limine, from eliciting any testimony from Laura L. Mahlmeister, Ph.D., R.N., as to the cause of any injuries suffered by the Plaintiffs;

      (b). Unless the Plaintiffs file a motion on or before June 5, 2015, seeking an evidentiary hearing, Plaintiffs are precluded, in limine, from eliciting any testimony from Dr. Stephen Glass, M.D., or Dr. Martin Gubernick, M.D., to the effect that any alleged breach of the standard of care by the Bellevue Medical Center caused injury to Plaintiff S.S. through the process described as Craniocerebral Compression Ischemic Encephalopathy ("CCIE"), or in-utero fetal head compression or trauma resulting from contractile forces of labor; and

The Motion is otherwise denied, without prejudice to Bellevue Medical Center raising objections at the time of trial; and

    3. The Motion for Summary Judgment by the Bellevue Medical Center (Filing No. 162) is denied.

    DATED this 27th day of May.

                                        BY THE COURT:

                                        s/Laurie Smith Camp
                                        Chief United States District Judge