# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DORAN SCHMIDT, Individually; and S.S., a minor, by and through Doran Schmidt, her natural mother and next friend;<br><br>Plaintiffs,<br><br>vs.<br><br>BELLEVUE MEDICAL CENTER, L.L.C.,<br><br>Defendants. | 8:13CV143<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on the Motion to Determine Lien, ECF No. 362, filed by Intervenor Nebraska Department of Health and Human Services (DHHS). For the reasons stated below, the Motion will be granted consistent with this Memorandum and Order.

## BACKGROUND

S.S. was born at the Bellevue Medical Center on November 2, 2012, with severe brain damage. Plaintiffs brought suit against Defendants Bellevue Medical Center, LLC; Heather Ramsey, the treating certified nurse midwife; and The Midwife's Place, where Doran Schmidt received her prenatal care as well as care during the early stages of labor. Before trial, Plaintiffs reached a settlement with Ramsey and The Midwife's Place. On August 6, 2015, following a two-week trial, the jury returned a verdict against the Bellevue Medical Center in the amount of $17,000,000.00. On November 25, 2015, the Court reduced the jury verdict to $1,750,000.00, plus post-judgment interest, under the Nebraska Hospital-Medical Liability Act (NHMLA), Neb. Rev. Stat. § 44-2825. ECF

No. 290. The United States Court of Appeals for the Eighth Circuit upheld the NHMLA's cap on damages. *See generally, Schmidt v. Ramsey*, 860 F.3d 1038, 1047 (8th Cir. 2017), *cert. denied sub nom. S.S. ex rel. Schmidt v. Bellevue Med. Ctr. L.L.C.*, 138 S. Ct. 506 (2017).

In order to pay for S.S.'s medical expenses, Schmidt received Medicaid benefits from DHHS. To date, DHHS has paid $146,180.89 of the $413,350.44 in billed charges. *See* Exhibit 4, ECF No. 363-3. DHHS now seeks full recovery of its subrogation interests.

## DISCUSSION

**I. DHHS's Lien Under the Nebraska Medical Assistance Program**

DHHS administers Nebraska's Medicaid program, known as the Nebraska Medical Assistance Program (NMAP). Neb. Rev. Stat. § 68-908; *see also Smalley v. Neb. Dep't of Health & Human Servs.*, 811 N.W.2d 246, 252 (Neb. 2012). NMAP provides joint state and federal funding of medical care for low-income Nebraskans. Neb. Rev. Stat. §§ 68-904, 905. Federal law requires states participating in Medicaid, such as Nebraska, to comply with standards and requirements imposed by federal statutes and regulations. *Thorson v. Neb. Dep't of Health & Human Servs.*, 740 N.W.2d 27, 30 (Neb. 2007). One of the federal statutory requirements relates to third-party liability for medical expenses that might otherwise be paid by Medicaid. Under the federal statute, the state agency administering the state's Medicaid program—DHHS in Nebraska—must take all reasonable measures to ascertain the legal liability of third parties. 42 U.S.C. § 1396a(a)(25)(A). Once the liability is ascertained, states must seek reimbursement to the extent of the legal liability. 42 U.S.C. § 1396k(a)(25)(B).

To facilitate recovery from liable third parties, states are required to pass laws, which provide a means to recover medical expenses. *See, e.g.,* 42 U.S.C. § 1396k(a)(25)(I). In situations where a third party is liable to make payments for medical expenses on behalf of a beneficiary, states are required to have laws in place throuhg which the state is deemed to have acquired the beneficiaries' rights to those payments. 42 U.S.C. § 1396k(a)(25)(H). NMAP's provisions are set out in Neb. Rev. Stat. § 68-916. Under § 68-916, recipients of NMAP benefits assign to DHHS their rights to pursue or receive payments for medical expenses from liable third party tortfeasors.

Under the terms of Neb. Rev. Stat. § 68-916, when Doran Schmidt applied for Medicaid benefits on behalf of S.S., she assigned her and S.S.'s rights to payments for medical expenses from a third party tortfeasor to DHHS. Before the jury determined Bellevue Medical Center's legal liability, DHHS paid $146,180.89 for S.S.'s medical expenses. *See* Carnes Aff. ¶ 3, ECF No. 363-2, Page ID 8122; Itemization of Medical Treatment, ECF No. 363-3. Plaintiffs do not dispute that they were recipients of NMAP benefits, nor do they dispute that DHHS has paid $146,180.89 in medical expenses for S.S. The judgment against Bellevue Medical Center for S.S.'s injuries established third party liability. Accordingly, under the express language of 42 U.S.C. § 1396k(b) and the provisions of the NMAP statutes, DHHS is entitled to reimbursement for the medical expenses it paid on behalf of S.S.

## II. Plaintiffs' Arguments Against the Lien

Plaintiffs argue that principles of fairness and equity demand that DHHS's claim be reduced or completely eliminated. Plaintiffs also argue that the lien is premature. For

the reasons stated below, neither of these arguments presents a basis for reducing or avoiding DHHS's lien.

### A. Equity and Fairness of the Lien

Plaintiffs first argue that DHHS was fully reimbursed when the jury's verdict was reduced from $17,000,000 to the statutory limit due to the NHMLA's cap on damages. Plaintiffs reason that DHHS saved significant money by avoiding a large payout under Nebraska's Excess Liability Fund. Nebraska's Excess Liability Fund, created in conjunction with the NHMLA, provides a state-run insurance benefit to qualified health care providers. Under the statute, the Excess Liability Fund pays medical malpractice damages in excess of $500,000 on behalf of qualifying health care providers. Neb. Rev. Stat. § 44-2832(2). Plaintiffs argue that the Excess Liability Fund saved approximately $15.52 million when the jury's verdict was reduced from $17 million to $1.75 million, the maximum amount recoverable under § 44-2825 of the NHMLA.

Plaintiffs' argument fails for several reasons. First, the Excess Liability Fund operates in conjunction with the damages cap in § 44-2825. Section 44-2832(2) states that the amount paid from the Excess Liability Fund may not exceed the cap on damages pronounced in § 44-2825. Thus, under the plain language of the statute, the benefit paid out by the Excess Liability Fund would have been the same, whether the verdict was reduced or not.

Second, Plaintiffs cite no authority that permits reimbursement to be satisfied through indirect means such as savings to a state insurance program. The Excess Liability Fund is supported, in part, by premiums paid by qualifying health providers and is administered by the State of Nebraska Department of Insurance. *See* Neb. Rev. Stat.

4

§ 44-2829. There is no evidence or authority suggesting that DHHS would benefit in any way from a reduction in the verdict. And, as stated above, the benefit paid still would have been subject to the cap set § 44-2825. Because there is no evidence or authority suggesting that such "savings" would satisfy the reimbursement requirement, DHHS is entitled to its lien on medical expenses it paid on S.S.'s behalf.

Plaintiffs also argue that even if DHHS is entitled to a lien for medical expenses, the amount must be reduced by an amount proportionate to the reduction of the jury's award. Plaintiffs argue that DHHS's attempt to assert a lien for its full expenditure in this matter runs afoul of the federal anti-lien requirements addressed in *Wos v. E.M.A. ex rel. Johnson,* 568 U.S. 627 (2013), and *Dep't of Health & Human Servs. v. Ahlborn,* 547 U.S. 268 (2006).

In *Ahlborn*, the Arkansas Department of Human Services (ADHS) asserted a Medicaid lien of $215,645.30 on a $550,000 settlement, but stipulated that only $35,581.47 of that settlement "constituted reimbursement for medical payments made." 547 U.S. at 274. The Supreme Court held that the ADHS could not claim any amount above $35,581.47 because the relevant federal statutes provide "no more than the right to recover that portion of a settlement that represents payments for medical care." *Id.* at 282.

In *Wos*, the Supreme Court addressed a settlement where the amount of the medical expenses was unknown. The Court invalidated North Carolina's statutory presumption that one-third of all settlements or judgments in medical malpractice cases represented medical expenses. *See Wos*, 568 U.S. at 1398–99. The Court held that the statute's presumption could permit state agencies to recover more than the amount

5

attributable to medical expenses, in violation of federal statute. *See id.* The Court explained that "a judicial or administrative proceeding" would be necessary to determine the amount of the settlement attributable to medical expenses. *Id.* at 1399.

Neither *Ahlborn* nor *Wos* prevents recovery of the lien asserted in this case. Unlike the ADHS in *Ahlborn*, DHHS has asserted a lien only on S.S.'s medical expenses that DHHS actually paid. Further, unlike the presumed medical expenses in *Wos*, the medical expenses in this case are known. DHHS has provided evidence of itemized medical expenses to support its claim. The anti-lien requirements discussed in *Ahlborn* and *Wos* therefore do not apply to this case. The statutes and case law expressly grant DHHS subrogation rights to the full amount it paid for medical expenses. The expenses claimed are supported by evidence and the amount is undisputed. Accordingly, there is no legal basis to reduce the lien in this case.

### B. Timing of the Lien

#### 1. Estate Recovery

In addition to their equitable arguments, Plaintiffs allege DHHS's request is premature under Neb. Rev. Stat. § 68-919. Section 68-919 states that Medicaid debt accruing during the life of the recipient "shall be held in abeyance until the death of the recipient." Neb. Rev. Stat. § 68-919(2). However, this subsection only applies to estate recovery, not third-party liability. *See* DHHS Manual Letter No. 13-2008, 471 NAC 38-001 (January 19, 2008). The same statute specifically states:

> Whenever the department has provided medical assistance because of sickness or injury to any person resulting from a third party's wrongful act or negligence and the person has recovered or may recover damages from such third party, to the fullest extent permitted by federal law and understandings entered into between the state and federal government,

6

> the department shall have the right to recover the medical assistance it paid from any amounts that the person has received or may receive from or on behalf of the third party.

Neb. Rev. Stat. § 68- 919(7). Thus, consistent with § 68-916, § 68-919(7) provides that whenever DHHS has paid medical expenses while legal liability of a third party was pending, it has the right to recover the full amount paid once liability of the tortfeasor has been established. Section 68-919(7) further provides that DHHS reduces its subrogation interests only when it consents to the suit against the third party tortfeasor. Under the statute, when DHHS consents to suit against a third party tortfeasor, in the event the Medicaid recipient incurs costs in pursuit of his/her claim (attorney's fees and litigation costs), DHHS reduces its subrogation interest by twenty-five percent of the value of the judgment, award, or settlement and a pro rata share of attorney's fees. *Id.*

In this case, Plaintiffs have not provided any evidence that they sought consent from DHHS prior to filing suit and as such have not established any basis for reduction of DHHS's subrogation interest. Nor did DHHS reach an agreement with Defendant to reduce the amount of medical expenses. Accordingly, § 68-919(2) does not prevent DHHS from seeking the full value of its subrogation interest.

### 2. *Special Needs Trust*

Plaintiffs also argue that DHHS cannot assert its lien because Plaintiffs intend to place the proceeds of the jury verdict into a special needs trust (SNT). Federal law permits the creation of special needs trusts, from which "the State will receive all amounts remaining in the trust upon the death of such individual up to an amount equal to the total medical assistance paid on behalf of the individual under a State plan under this subchapter." 42 U.S.C. § 1396p(d)(4)(A). Plaintiffs argue that because they intend

7

to place the proceeds of the verdict into an SNT, DHHS has no interest in any amount of the verdict until S.S.'s death.

The Eighth Circuit addressed an identical argument in *Norwest Bank of N.D., N.A. v. Doth*, 159 F.3d 328 (8th Cir. 1998). In *Doth*, the plaintiff argued that the Minnesota Department of Human Services (MDHS) was not entitled to satisfaction of its existing Medicaid assistance liens prior to the creation of an SNT. 159 F.3d at 330. The Eighth Circuit rejected this argument, holding that SNTs "do not postpone the state's right to enforce its vested and existing Medicaid lien." *Id.* at 333. The court reasoned that "adopting [the plaintiff's] position would allow a Medicaid recipient, who secures a judgment or settlement, to evade an existing state lien by placing the proceeds in an SNT." *Id.* "This interpretation would eviscerate Congress's clearly expressed intention that these funds be repaid." *Id.* (internal citation and quotation marks omitted).

Plaintiffs set forth the same argument as the plaintiff in *Doth*. As stated in *Doth*, Plaintiffs cannot evade DHHS's existing lien by placing the proceeds of the verdict in an SNT. Accordingly, under the terms of state and federal Medicaid law, DHHS's lien must be satisfied before the remaining funds are placed in the SNT.

## CONCLUSION

The express language of federal and state Medicaid statutes permits DHHS to recover the full amount of medical expenses it paid on S.S.'s behalf. DHHS has provided evidence of these expenses and the amount is undisputed. Plaintiffs provide no legal basis to reduce the amount. Accordingly, DHHS is entitled to recover its full subrogation interest.

Accordingly,

IT IS ORDERED:

1. The Motion to Determine Lien, ECF No. 362, filed by Intervenor Nebraska Department of Health and Human Services, is granted; and

2. Consistent with this Memorandum and Order, Intervenor Nebraska Department of Health and Human Services is statutorily entitled to a lien of $145,485.29 against the Amended Judgment, ECF No. 290, representing its statutory subrogation interest in the judgment entered against Defendant Bellevue Medical Center in this case.

Dated this 21st day of May, 2018.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge